UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                              :   FILED
                                              :   APRIL 10, 2008           YM
ELAINE L. CHAO, Secretary of Labor,           :   08CV2029
United States Department of Labor,            :   JUDGE KENDALL
                                              :   MAGISTRATE JUDGE BROWN
                     Plaintiff,               :
                                              :   CIVIL ACTION
         v.                                   :
                                              :   File No.
AA CAPITAL PARTNERS, INC., JOHN ORECCHIO,     :
MARY ELIZABETH STEVENS,                       :
AA CAPITAL LIQUIDITY MANAGEMENT, LLC,         :
                                              :
                     Defendants.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**COMPLAINT**

Plaintiff, ELAINE L. CHAO, Secretary of Labor, United States Department of Labor ("Secretary"), alleges:

**JURISDICTION AND VENUE**

1. This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq., and is brought by the Secretary under ERISA §§502(a)(2) and (5), 29 U.S.C. §§1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA §409, 29 U.S.C. §1109, and to obtain such further equitable relief as may be appropriate to redress the violations and to enforce the provisions of Title I of ERISA.

2. This court has jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

3. Venue of this action lies in the Northern District of Illinois, Eastern Division, pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because at all relevant times AA Capital

Partners, Inc.[1] ("AA Capital") maintained business offices at 10 S. LaSalle, Suite 3712, Chicago, Illinois 60603, within this district and division.

## THE DEFENDANTS

### AA Capital Partners, Inc.

4.      AA Capital is an investment management firm which was incorporated in Delaware in February 2002.  AA Capital primarily provides investment management and advisory services to union pension funds and is a registered investment advisor under the Investment Advisors Act of 1940.

5.      AA Capital provided investment management and advisory services to employee benefit plans within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), including: the Carpenters Pension Trust Fund – Detroit and Vicinity ("Detroit Carpenters Plan"); the Operating Engineers Local No. 324 Pension Fund ("Operating Engineers Plan"); the Michigan Regional Council of Carpenters Annuity Fund ("MRCC Plan"); the Millwrights' Local No. 1102 Supplemental Pension Fund ("Millwrights Plan"); and the Michigan Teamsters Joint Council #43 Pension Fund ("Michigan Teamsters Plan").  Collectively these plans will be referred to hereinafter as the "ERISA Plans".

6.      Each of the ERISA Plans entered into an Investment Management Agreement or Qualified Plan Asset Manager Investment Management Agreement with AA Capital.  Under these agreements AA Capital accepted its appointment as an investment manager under ERISA §3(38), 29 U.S.C. §1002(38), and as a fiduciary to each of the ERISA Plans.

---

[1]An agreed order was entered by Judge Gettleman on September 13, 2006 (*U.S. SEC v. AA Capital Partners, Inc., et al.*, Case No. 06-CV-04859, Document No. 22), appointing a Receiver for AA Capital Partners, Inc. and staying individuals from interfering with the Receiver's management of AA Capital's property and assets.  It is the Secretary's position that her action, which is being filed pursuant to the Department of Labor's police and regulatory power under Title I of ERISA, does not violate Judge Gettleman's stay order.

7.     In their agreements with AA Capital, the ERISA Plans granted AA Capital the authority to invest and disburse funds from the assets the ERISA Plans had given AA Capital control over, including the authority to invest plan assets into investment funds organized, managed or controlled by AA Capital.  At all relevant times, AA Capital exercised this investment and disbursement authority without consulting with, or seeking the approval of, the ERISA Plans' trustees.

8.     At all relevant times, AA Capital had discretionary authority and control over the ERISA Plans' investments and the bank trust accounts AA Capital established in the name of each of the ERISA Plans to hold the ERISA Plans' assets until they were invested (hereinafter these accounts will be referred to as "bank trust accounts") and exercised that authority and control on a continuous basis.

9.     As a result of  its discretionary authority and control over the management of the ERISA Plans' assets and investments, and its exercise of control over the management and disposition of those assets and investments as set forth in paragraphs 4 through 8 above, AA Capital was at all relevant times a fiduciary to the ERISA Plans within the meaning of ERISA §3(21)(A)(i) and (iii) , 29 U.S.C. §1002(21)(A)(i) and (iii); and, a party in interest to the ERISA Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A).  As a service provider to the ERISA Plans, AA Capital was also a party in interest to the ERISA Plans within the meaning of ERISA §§3(14)(B), 29 U.S.C. §§1002(14)(B).

### Officers of AA Capital

10.    At all relevant times, defendant John Orecchio ("Orecchio"), a co-owner of AA Capital, served as the President and a Managing Director of AA Capital and served as a member of the firm's Board of Directors.

11. At all relevant times, defendant Mary Elizabeth Stevens ("Stevens"), served as the Chief Financial Officer and Chief Compliance Officer of AA Capital.

12. At all relevant times, AA Capital exercised the investment and disbursement authority granted to it by the ERISA Plans through defendants Orecchio and Stevens.

13. At all relevant times, defendants Orecchio and Stevens made investment decisions with respect to the assets the ERISA Plans transferred to AA Capital pursuant to the Investment Management Agreements the ERISA Plans had executed with AA Capital.

14. At all relevant times, defendants Orecchio and Stevens exercised authority and control over the investment and disbursement of funds from the ERISA Plans' bank trust accounts.

15. At all relevant times, defendants Orecchio and Stevens generally exercised authority and control over the investments made by AA Capital on behalf of the ERISA Plans.

16. As a result of their exercise of control and authority over the investments of the ERISA Plans' assets and the management and disposition of those assets as set forth in paragraphs 10 through 15 above, defendants Orecchio and Stevens were fiduciaries of the ERISA Plans within the meaning of ERISA §3(21)(A)(i) , 29 U.S.C. §1002(21)(A)(i); and, parties in interest to the ERISA Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A). As officers of AA Capital, defendants Orecchio and Stevens were also parties in interest to the ERISA Plans within the meaning of ERISA §§3(14)(H), 29 U.S.C. §§1002(14)(H).

**AA Capital Liquidity Management, LLC**

17. Defendant AA Capital Liquidity Management, LLC ("Liquidity Management") is a limited liability company which was organized in Illinois. Liquidity Management was formed to serve as the general partner for AA Capital Equity Fund II, LP ("Equity Fund II"), a

limited partnership formed by AA Capital in January 2005. Equity Fund II's assets were invested in real estate loans and entities that developed real property.

18. Pursuant to Equity Fund II's operating agreement, Liquidity Management was solely responsible for operating Equity Fund II and investing its assets.

19. At all relevant times, defendants Orecchio and Stevens were both part owners of Liquidity Management and served as the company's Secretary and Treasurer, respectively; defendant AA Capital served as the Investment Manager for Liquidity Management with respect to Equity Fund II.

20. At all relevant times, Liquidity Management exercised its investment and disbursement authority granted to it by Equity Fund II through defendants Orecchio and Stevens.

21. In its capacity as investment manager, AA Capital invested assets of the Millwrights Plan and MRCC Plan in Equity Fund II. As a result of these investments, the underlying assets of Equity Fund II constituted plan assets under ERISA.

22. At all relevant times, Liquidity Management had discretionary authority and control over the assets and investments of Equity Fund II, and exercised control over the management and disposition of those assets and investments.

23. As a result of its discretionary control and authority over assets and investments of Equity Fund II and its exercise of control over the management and disposition of those assets and investments, defendant Liquidity Management was a fiduciary to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(21)(A)(i), 29 U.S.C. §1002(21)(A)(i); and, a party in interest to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(14)(A), 29 U.S.C. §§1002(14)(A).

## DEFENDANTS' VIOLATIONS OF ERISA

### Expenditure of Plan Assets for Non-Plan Purposes

24. Pursuant to AA Capital's investment management agreements with the ERISA Plans, the assets committed by each plan were transferred directly to AA Capital and placed by AA Capital into separate bank trust accounts held in the name of each plan.

25. At all relevant times, defendants Stevens and Orecchio were signatories on the ERISA Plans' bank trust accounts.

26. The assets in the ERISA Plans' bank trust accounts were to be used by AA Capital solely for investment purposes on behalf of the ERISA Plans or, when agreed upon, to pay fees to AA Capital in accordance with the fee schedule set forth in the investment management agreements.

27. Defendant AA Capital formed AA Capital Equity Fund I, LP ("Equity Fund I") in August 2002, and AA Capital Equity Fund II ("Equity Fund II") in January 2005.

28. AA Capital Private Equity Investors Management, LLC ("Private Equity"), an Illinois limited liability company, served as the general partner for Equity Fund I. Defendants Orecchio and Stevens had partial ownership interests in Private Equity. Orecchio served as Private Equity's President and Secretary and was a member of its Board of Managers; defendant AA Capital served as the Investment Manager for Private Equity with respect to Equity Fund I.

29. At all relevant times, Private Equity exercised its investment and disbursement authority granted to it by Equity Fund I through defendants Orecchio and Stevens.

30. At all relevant times, defendants AA Capital, Orecchio, and Stevens caused the ERISA Plans to invest plan assets in Equity Fund I and/or Equity Fund II. These investments

were accomplished through the execution of subscription agreements executed by AA Capital on behalf of each ERISA Plan with respect to each investment vehicle.

31. Pursuant to the subscription agreements, a specific amount of plan assets was committed for investment in either Equity Fund I, Equity Fund II, or both, on behalf of a specific ERISA Plan.

32. Upon information and belief, although defendant AA Capital committed the ERISA Plans to specific dollar amounts for investment in Equity Fund I and/or Equity Fund II at the time the subscription agreements were executed, the assets in a given ERISA Plan's bank trust account were not transferred by defendants AA Capital, Orecchio or Stevens from that account to an account in the name of Equity Fund I or Equity Fund II until the investment fund's general partner issued a "capital call" to the investment fund's investors.

33. Upon information and belief, once the investment funds' general partner issued a capital call to the ERISA Plans, defendants AA Capital, Stevens and Orecchio caused assets to be transferred from the ERISA Plans' bank trust accounts to meet these capital calls. The intended recipients of these assets were the investment funds.

34. Upon information and belief, Equity Fund I's and Equity Fund II's bank accounts were zero balance accounts in which deposits were to be used for investments or to pay legitimate operating expenses of the investment funds.

35. Pursuant to the subscription agreements executed on behalf of the ERISA Plans, money transferred from an ERISA Plan's bank trust account to a bank account held in the name of Equity Fund I or Equity Fund II pursuant to a capital call could only be used by the investment fund's general partner to make investments or to pay the investment fund's legitimate operating expenses.

36. Between January 12, 2005 and July 14, 2006, defendants AA Capital, Orecchio and Stevens caused Private Equity and Liquidity Management, respectively the general partners for Equity Fund I and Equity Fund II, to issue over 170 capital calls, totaling over $33 million, on behalf of the investment funds to the ERISA Plans.

37. Upon information and belief, instead of transferring all $33 million directly to Equity Fund I and Equity Fund II, defendants AA Capital, Stevens and Orecchio caused approximately $18 million to be transferred to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

38. Upon information and belief, in partial response to the $33 million in capital calls, AA Capital, Stevens and Orecchio caused approximately $5.4 million to be transferred from the ERISA Plans' bank trust accounts to a bank account held in the name of Equity Fund I. Thereafter, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused these assets to thereafter be transferred to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

39. Upon information and belief, in partial response to the $33 million in capital calls, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused approximately $2.5 million to be transferred from Equity Fund I's bank account to AA Capital's general operating account. These assets represented reductions from investment disbursements which were to be made directly by Private Equity from the assets of Equity Fund I to the ERISA

Plans' bank trust accounts. Instead, the ERISA Plans received net investment disbursements that Orecchio, AA Capital and Stevens caused Private Equity to reduce by $2.5 million to meet capital calls.

40. Upon information and belief, in partial response to the $33 million in capital calls, defendants AA Capital, Orecchio and Stevens acting on behalf of Private Equity caused the $2.5 million in assets retained in Equity Fund I's bank account referred to in paragraph 39 to be transferred directly into AA Capital's general operating account where these assets were used to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

41. Upon information and belief, defendants Liquidity Management, AA Capital, Orecchio and Stevens permitted assets to be transferred from the MRCC Plan's and the Millwrights Plan's plan bank trust accounts to AA Capital to pay a portion of the capital calls. Liquidity Management credited these transfers against the outstanding investment commitments AA Capital had made on behalf of MRCC Plan and the Millwrights Plan in Equity Fund II, even though these assets were not used for the benefit of Equity Fund II.

### The Payment of Unauthorized fees

42. On August 19, 2002, AA Capital entered into an investment management agreement with the Detroit Carpenters Plan which provided that AA Capital would receive the following fees for providing services to the Detroit Carpenters Plan:

    a. an annual management fee equal to 1% of the value of the assets under management; plus

      b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

    43.    The investment management agreement with the Detroit Carpenters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Detroit Carpenters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

    44.    On December 12, 2003, AA Capital entered into an investment management agreement with the Operating Engineers Plan which provided that AA Capital would receive the following fees for providing services to the Operating Engineers Plan:

      a.    an annual management fee equal to .75% of the value of the assets under management; plus

      b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

    45.    The investment management agreement with the Operating Engineers Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Operating Engineers Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

    46.    In November 2004, AA Capital entered into an investment management agreement with the Millwrights Plan which provided that AA Capital would receive the following fees for providing services to the Millwrights Plan:

      a.    an annual management fee equal to 1% of the value of the assets under management; plus

      b.    out-of pocket costs and expenses incurred in connection with services

rendered (excluding any overhead costs and expenses of AA Capital).

47. The investment management agreement with the Millwrights Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Millwrights Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

48. On June 1, 2004, AA Capital entered into an investment management agreement with the Michigan Teamsters Plan which provided that AA Capital would receive the following fees for providing services to the Michigan Teamsters Plan:

    a. an annual management fee equal to 1% of the value of the assets under management; plus

    b. out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

49. The investment management agreement with the Michigan Teamsters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Michigan Teamsters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

50. On July 1, 2002, AA Capital entered into a management agreement with Private Equity under which, for an annual fee between 1% and 1.25% of all subscriptions received from investors in Equity Fund I, AA Capital agreed to perform various management services for the investment fund.

51. On November 1, 2004, AA Capital entered into a management agreement with Liquidity Management where, for an annual fee of 1% of all subscriptions received from

investors in Equity Fund II, AA Capital agreed to perform various management services for the investment fund.

52. From August 19, 2002 to August 31, 2006, AA Capital received management fees from Equity Fund I and Equity Fund II, but in violation of its investment management agreements with the Detroit Carpenters Plan, Operating Engineers Plan, Millwrights Plan and Michigan Teamsters Plan defendants AA Capital, Orecchio and Stevens did not reduce the investment management fees AA Capital charged said ERISA Plans by the amount of fees AA Capital received from Equity Fund I and Equity Fund II as a result of AA Capital's investment of the ERISA Plans' assets in these investment funds.

## COUNT ONE

### Expenditure of Plan Assets for Non-Plan Purposes

53. The allegations contained in paragraphs 1 through 41, are hereby incorporated in this Count.

54. By the conduct described in paragraphs 33 through 40 above, defendants Orecchio, Stevens, and AA Capital:

    a. failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

    b. caused the ERISA Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the ERISA Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D); and,

      c.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

55.    By the conduct described in paragraphs 33 through 40 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

56.    By the conduct described in paragraph 41 above, defendant Liquidity Management:

      a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and,

      b.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

## COUNT TWO

### The Payment of Unauthorized fees

57.    The allegations contained in paragraphs 1 through 23, 27, 28 and 42 through 52, are hereby incorporated in this Count.

58.    By the conduct described in paragraph 52 above, AA Capital, Orecchio, and Stevens:

      a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their

beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

   b. failed to discharge their duty with respect to the ERISA Plans in accordance with the documents and instruments governing the ERISA Plans in violation of ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D); and

   c. acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

 59. By the conduct described in paragraphs 52 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

## PRAYER FOR RELIEF

 WHEREFORE, the Secretary prays for judgment:

 **A.** Permanently enjoining all defendants from violating the provisions of Title I of ERISA, including participating in the violation of others;

 **B.** Ordering defendants AA Capital, Orecchio, Stevens, and Liquidity Management to restore all losses incurred by the ERISA Plans as a result of the violations of ERISA committed by them or for which they are liable, with appropriate interest;

 **C.** Requiring defendants AA Capital, Orecchio, Stevens, and Liquidity Management to disgorge all ill-gotten gains resulting from their violations of Title I of ERISA;

 **D.** Ordering defendants AA Capital, Orecchio, Stevens, and Liquidity Management to correct the prohibited transactions in which they engaged;

 **E.** Permanently enjoining defendants Orecchio and Stevens from serving as fiduciaries or service providers to any ERISA-covered employee benefit plan;

  F. After the completion of the court appointed receivership (Northern District of Illinois civil case no. 06CV-4859) for AA Capital, permanently enjoining defendants AA Capital and Liquidity Management from serving as fiduciaries or service providers to any ERISA-covered employee benefit plan;

  G. Awarding the Secretary the costs of this action; and

  H. Ordering such further relief as is appropriate and just.

          **GREGORY F. JACOB**
          Solicitor of Labor

          **JOAN E. GESTRIN**
          Regional Solicitor

          s/ Christine Z. Heri
          **CHRISTINE Z. HERI**
          Senior Trial Attorney

          s/ Ruben R. Chapa
          **RUBEN R. CHAPA**
          Attorney

**ADDRESS:**
Office of the Solicitor
U.S. Department of Labor      Attorneys for **ELAINE L. CHAO**,
230 South Dearborn Street, Room 844   Secretary of Labor, United States
Chicago, Illinois 60604        Department of Labor, Plaintiff
Telephone: (312) 353-6993