**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
| | |
|---|---|
| **ELAINE L. CHAO**, Secretary of Labor, | : |
| United States Department of Labor, | : |
| | : |
| Plaintiff, | : |
| | :     CIVIL ACTION |
| v. | : |
| | :     File No. 08 c 2029 |
| **AA CAPITAL PARTNERS, INC., JOHN ORECCHIO,** : | |
| **MARY ELIZABETH STEVENS,** | :     Judge Gettleman |
| **AA CAPITAL LIQUIDITY MANAGEMENT, LLC,** | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### SECRETARY'S  MOTION FOR LEAVE TO FILE
### HER FIRST AMENDED COMPLAINT

ELAINE L. CHAO, Secretary of Labor, U.S. Department of Labor ("Secretary"),

pursuant to Rule 15(a) and (c) of the Federal rules of Civil Procedure, hereby moves for leave to

file an amended complaint (attached hereto as Exhibit A, and made a part hereof) in the above-

captioned action  to clarify fact allegations set forth in paragraphs 36 through 41 of her

complaint and to add an additional count with respect to investments made by defendants AA

Capital Partners, Inc.,  John Orecchio, and Mary Elizabeth Stevens in Brush Monroe, LP.  In

support of her motion the Secretary states as follows:

1.      The Secretary's complaint was filed on April 10, 2008.

2.      To date only AA Capital Liquidity Management, LLC.  has filed an answer.  Its

answer was filed on June 16, 2008.

3.      The Secretary's First Amended Complaint clarifies her original complaint by

1

amending paragraphs 36 through 41 based on her additional investigation of the facts in this matter.  These factual claims arise from the same conduct and transactions alleged in the same paragraphs in the Secretary's original complaint.

4.    This amendment will not cause delay in the trial of the instant action and is sought in the interest of justice.

5.    All of the defendants have been contacted regarding this motion.  Defendants AA Capital Partners, Inc. and  AA Liquidity Management, LLC do not oppose this motion as it relates to amending paragraphs 36 through 41 of the Secretary's complaint.  Defendants John Orecchio and Mary Beth Stevens have not responded to the Secretary's inquiry regarding their position on this motion.

6.    The Secretary also seeks to amend her complaint by adding additional factual and legal allegations with respect to defendants AA Capital Partners, Inc., John Orecchio, and Mary Elizabeth Stevens investment of plan assets in the Brush Monroe, LP in 2006.  The Secretary has not named AA Capital Liquidity Management, LLC. as a defendant with respect to these additional factual and legal allegations.

7.    Neither AA Capital Partners, Inc., John Orecchio, nor Mary Elizabeth Stevens have filed an answer in response to the Secretary's original complaint.  Therefore, it is the Secretary's position that she can amend her complaint with respect to the Brush Monroe, LP allegations as a matter of course with out first obtaining the consent of the parties or leave of court.

WHEREFORE, having shown good cause, the Secretary respectfully requests that the

2

court issue an order permitting the Secretary to file her First Amended Complaint and that

paragraphs 36 through 41 of the amended complaint relate back to the date of her original

complaint.

**GREGORY F. JACOB**
Solicitor of Labor

**JOAN E. GESTRIN**
Regional Solicitor

_____/s Christine Z. Heri_____
**CHRISTINE HERI**
Senior Trial Attorney

**ADDRESS:**
Office of the Solicitor                     U.S. Department of Labor,
U.S. Department of Labor                    Attorneys for ELAINE L. CHAO
230 South Dearborn Street                   Secretary of Labor
Chicago, Illinois 60604                     Plaintiff
Telephone:  (312) 353-7836

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| **ELAINE L. CHAO**, Secretary of Labor,<br>United States Department of Labor, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | File No. 08 cv 2029 |
| **AA CAPITAL PARTNERS, INC., JOHN ORECCHIO,** | : | |
| **MARY ELIZABETH STEVENS,** | : | Judge Gettleman |
| **AA CAPITAL LIQUIDITY MANAGEMENT, LLC,** | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### FIRST AMENDED COMPLAINT

Plaintiff, ELAINE L. CHAO, Secretary of Labor, United States Department of Labor ("Secretary"), alleges:

### JURISDICTION AND VENUE

1.    This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq., and is brought by the Secretary under ERISA §§502(a)(2) and (5), 29 U.S.C. §§1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA §409, 29 U.S.C. §1109, and to obtain such further equitable relief as may be appropriate to redress the violations and to enforce the provisions of Title I of ERISA.

2.    This court has jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

2

3.      Venue of this action lies in the Northern District of Illinois, Eastern Division, pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because at all relevant times AA Capital Partners, Inc. ("AA Capital") maintained business offices at 10 S. LaSalle, Suite 3712, Chicago, Illinois 60603, within this district and division.

## THE DEFENDANTS

### AA Capital Partners, Inc.

4.      AA Capital is an investment management firm which was incorporated in Delaware in February 2002.  AA Capital primarily provides investment management and advisory services to union pension funds and is a registered investment advisor under the Investment Advisors Act of 1940.

5.      AA Capital provided investment management and advisory services to employee benefit plans within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), including: the Carpenters Pension Trust Fund – Detroit and Vicinity ("Detroit Carpenters Plan"); the Operating Engineers Local No. 324 Pension Fund ("Operating Engineers Plan"); the Michigan Regional Council of Carpenters Annuity Fund ("MRCC Plan"); the Millwrights' Local No. 1102 Supplemental Pension Fund ("Millwrights Plan"); and the Michigan Teamsters Joint Council #43 Pension Fund ("Michigan Teamsters Plan").  Collectively these plans will be referred to hereinafter as the "ERISA Plans".

6.      Each of the ERISA Plans entered into an Investment Management Agreement or Qualified Plan Asset Manager Investment Management Agreement with AA Capital.  Under these agreements AA Capital accepted its appointment as an investment manager under ERISA §3(38), 29 U.S.C. §1002(38), and as a fiduciary to each of the ERISA Plans.

7.      In their agreements with AA Capital, the ERISA Plans granted AA Capital the authority to invest and disburse funds from the assets the ERISA Plans had given AA Capital control over, including the authority to invest plan assets into investment funds organized, managed or controlled by AA Capital.  At all relevant times, AA Capital exercised this investment and disbursement authority without consulting with, or seeking the approval of, the ERISA Plans' trustees.

8.      At all relevant times, AA Capital had discretionary authority and control over the ERISA Plans' investments and the bank trust accounts AA Capital established in the name of each of the ERISA Plans to hold the ERISA Plans' assets until they were invested (hereinafter these accounts will be referred to as "bank trust accounts") and exercised that authority and control on a continuous basis.

9.      As a result of  its discretionary authority and control over the management of the ERISA Plans' assets and investments, and its exercise of control over the management and disposition of those assets and investments as set forth in paragraphs 4 through 8 above, AA Capital was at all relevant times a fiduciary to the ERISA Plans within the meaning of ERISA §3(21)(A)(i) and (iii) , 29 U.S.C. §1002(21)(A)(i) and (iii); and, a party in interest to the ERISA Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A).  As a service provider to the ERISA Plans, AA Capital was also a party in interest to the ERISA Plans within the meaning of ERISA §§3(14)(B), 29 U.S.C. §§1002(14)(B).

**Officers of AA Capital**

10.     At all relevant times, defendant John Orecchio ("Orecchio"), a co-owner of AA Capital, served as the President and a Managing Director of AA Capital and served as a member of the firm's Board of Directors.

4

11.     At all relevant times, defendant Mary Elizabeth Stevens ("Stevens"), served as the Chief Financial Officer and Chief Compliance Officer of AA Capital.

12.     At all relevant times, AA Capital exercised the investment and disbursement authority granted to it by the ERISA Plans through defendants Orecchio and Stevens.

13.     At all relevant times, defendants Orecchio and Stevens made investment decisions with respect to the assets the ERISA Plans transferred to AA Capital pursuant to the Investment Management Agreements the ERISA Plans had executed with AA Capital.

14.     At all relevant times, defendants Orecchio and Stevens exercised authority and control over the investment and disbursement of funds from the ERISA Plans' bank trust accounts.

15.     At all relevant times, defendants Orecchio and Stevens generally exercised authority and control over the investments made by AA Capital on behalf of the ERISA Plans.

16.     As a result of their exercise of control and authority over the investments of the ERISA Plans assets and the management and disposition of those assets as set forth in paragraphs 10 through 15 above, defendants Orecchio and Stevens were fiduciaries of the ERISA Plans within the meaning of ERISA §3(21)(A)(i) , 29 U.S.C. §1002(21)(A)(i); and, parties in interest to the ERISA Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A).  As officers of AA Capital, defendants Orecchio and Stevens were also parties in interest to the ERISA Plans within the meaning of ERISA §§3(14)(H), 29 U.S.C. §§1002(14)(H).

**AA Capital Liquidity Management, LLC**

17.     Defendant AA Capital Liquidity Management, LLC ("Liquidity Management ") is a limited liability company which was organized in Illinois.  Liquidity Management was formed to serve as the general partner for AA Capital Equity Fund II, LP ("Equity Fund II"), a

limited partnership formed by AA Capital in January 2005. Equity Fund II's assets were invested in real estate loans and entities that developed real property.

18.    Pursuant to Equity Fund II's operating agreement, Liquidity Management was solely responsible for operating Equity Fund II and investing its assets.

19.    At all relevant times, defendants Orecchio and Stevens were both part owners of Liquidity Management and served as the company's Secretary and Treasurer, respectively; defendant AA Capital served as the Investment Manager for Liquidity Management with respect to Equity Fund II.

20.    At all relevant times, Liquidity Management exercised its investment and disbursement authority granted to it by Equity Fund II through defendants Orecchio and Stevens.

21.    In its capacity as investment manager, AA Capital invested assets of the Millwrights Plan and MRCC Plan in Equity Fund II. As a result of these investments, the underlying assets of Equity Fund II constituted plan assets under ERISA.

22.    At all relevant times, Liquidity Management had discretionary authority and control over the assets and investments of Equity Fund II, and exercised control over the management and disposition of those assets and investments.

23.    As a result of its discretionary control and authority over assets and investments of Equity Fund II and its exercise of control over the management and disposition of those assets and investments, defendant Liquidity Management was a fiduciary to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(21)(A)(i) , 29 U.S.C. §1002(21)(A)(i); and, a party in interest to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(14)(A), 29 U.S.C. §§1002(14)(A).

## DEFENDANTS' VIOLATIONS OF ERISA

### Expenditure of Plan Assets for Non-Plan Purposes

24.     Pursuant to AA Capital's investment management agreements with the ERISA

Plans, the assets committed by each plan were transferred directly to AA Capital and placed by

AA Capital into separate bank trust accounts held in the name of each plan.

25.     At all relevant times, defendants Stevens and Orecchio were signatories on the

ERISA Plans' bank trust accounts.

26.     The assets in the ERISA Plans' bank trust accounts were to be used by AA

Capital solely for investment purposes on behalf of the ERISA Plans or, when agreed upon, to

pay fees to AA Capital in accordance with the fee schedule set forth in the investment

management agreements.

27.     Defendant AA Capital formed AA Capital Equity Fund I, LP ("Equity Fund I") in

August 2002, and AA Capital Equity Fund II ("Equity Fund II") in January 2005.

28.     AA Capital Private Equity Investors Management, LLC ("Private Equity "),  an

Illinois limited liability company,  served as the general partner for Equity Fund I.  Defendants

Orecchio and Stevens had partial ownership interests in Private Equity. Orecchio served as

Private Equity's President and Secretary and was a member of its Board of Managers; defendant

AA Capital served as the Investment Manager for Private Equity with respect to Equity Fund I.

29.     At all relevant times, Private Equity exercised its investment and disbursement

authority granted to it by Equity Fund I through defendants Orecchio and Stevens.

30.     At all relevant times, defendants AA Capital, Orecchio, and Stevens caused the

ERISA Plans to invest plan assets in Equity Fund I and/or Equity Fund II.   These investments

were accomplished through the execution of subscription agreements executed by AA Capital on

behalf of each ERISA Plan with respect to each investment vehicle.

31.    Pursuant to the subscription agreements, a specific amount of plan assets was

committed for investment in either Equity Fund I, Equity Fund II, or both, on behalf of a specific

ERISA Plan.

32.    Upon information and belief, although defendant AA Capital committed the

ERISA Plans to specific dollar amounts for investment in  Equity Fund I and/or Equity Fund II at

the time the subscription agreements were executed, the assets in a given ERISA Plan's bank

trust account were not transferred by defendants AA Capital, Orecchio or Stevens from that

account to an account in the name of Equity Fund I or Equity Fund II until the investment fund's

general partner issued a "capital call" to the investment fund's investors.

33.    Upon information and belief, once the investment funds' general partner issued a

capital call to the ERISA Plans, defendants AA Capital, Stevens and Orecchio caused assets to

be transferred from the ERISA Plans' bank trust accounts to meet these capital calls.  The

intended recipients of these assets were the investment funds.

34.    Upon information and belief, Equity Fund I's and Equity Fund II's bank accounts

were zero balance accounts in which deposits were to be used for investments or to pay

legitimate operating expenses of the investment funds.

35.    Pursuant to the subscription agreements executed on behalf of the ERISA Plans,

money transferred from an ERISA Plan's bank trust account to a bank account held in the name

of Equity Fund I or Equity Fund II pursuant to a capital call could only be used by the

investment fund's general partner to make investments or to pay the investment fund's legitimate

operating expenses.

36.    Between May 19, 2004 and July 14, 2006, defendants AA Capital, Orecchio and Stevens caused Private Equity and Liquidity Management, respectively the general partners for Equity Fund I and Equity Fund II, to issue hundreds of capital calls on behalf of the investment funds to the ERISA Plans.

37.    Upon information and belief, instead of transferring all capital call payments directly to Equity Fund I and Equity Fund II, defendants AA Capital, Stevens and Orecchio caused approximately $18.6 million to be transferred from the ERISA Plans' bank trust accounts to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

38.    Upon information and belief, in partial response to the capital calls issued, AA Capital, Stevens and Orecchio caused approximately $1.1 million to be transferred from the ERISA Plans' bank trust accounts to bank accounts held in the name of Equity Fund I and Equity Fund II.  Thereafter, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity and Liquidity Management caused these assets to thereafter be transferred to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

39.    Upon information and belief, in partial response to capital calls issued, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused approximately $2.5 million to be transferred from Equity Fund I's bank account to AA Capital's general operating

account.  These assets represented reductions from investment disbursements which were to be made directly by Private Equity from the assets of Equity Fund I to the ERISA Plans' bank trust accounts.  Instead, the ERISA Plans received net investment disbursements that Orecchio, AA Capital and Stevens caused Private Equity to reduce by $2.5 million to meet capital calls.

40.     Upon information and belief, in partial response to capital calls issued, defendants AA Capital, Orecchio and Stevens acting on behalf of Private Equity caused the $2.5 million in assets retained in Equity Fund I's bank account referred to in paragraph 39  to be transferred directly into AA Capital's general operating account where these assets were used to pay for, among other things, AA Capital's corporate operating expenses.

41.     Upon information and belief, in partial response to capital calls issued, defendants Liquidity Management, AA Capital, Orecchio and Stevens permitted assets to be transferred from the MRCC Plan's and the Millwrights Plan's plan bank trust accounts to AA Capital to pay a portion of the capital calls.  Liquidity Management credited these transfers against the outstanding investment commitments AA Capital had made on behalf of MRCC Plan and the Millwrights Plan in Equity Fund II, even though these assets were not used for the benefit of Equity Fund II.

**The Payment of Unauthorized fees**

42.     On August 19, 2002, AA Capital entered into an investment management agreement with the Detroit Carpenters Plan which provided that AA Capital would receive the following fees for providing services to the Detroit Carpenters Plan:

a.     an annual management fee equal to 1%  of the value of the assets under management;  plus

       b.      out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

43.     The investment management agreement with the Detroit Carpenters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Detroit Carpenters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

44.     On December 12, 2003, AA Capital entered into an investment management agreement with the Operating Engineers Plan which provided that AA Capital would receive the following fees for providing services to the Operating Engineers Plan:

       a.      an annual management fee equal to .75%  of the value of the assets under management;  plus

       b.      out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

45.     The investment management agreement with the Operating Engineers Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Operating Engineers Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

46.     In November 2004, AA Capital entered into an investment management agreement with the Millwrights Plan which provided that AA Capital would receive the following fees for providing services to the Millwrights Plan:

       a.      an annual management fee equal to 1%  of the value of the assets under management;  plus

       b.      out-of pocket costs and expenses incurred in connection with services

rendered (excluding any overhead costs and expenses of AA Capital).

47.     The investment management agreement with the Millwrights Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Millwrights Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

48.     In June 1, 2004, AA Capital entered into an investment management agreement with the Michigan Teamsters Plan which provided that AA Capital would receive the following fees for providing services to the Michigan Teamsters Plan:

        a.      an annual management fee equal to 1%  of the value of the assets under management;  plus

        b.      out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

49.     The investment management agreement with the Michigan Teamsters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Michigan Teamsters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

50.     On July 1, 2002, AA Capital entered into a management agreement with Private Equity under which, for an annual fee between 1% and 1.25% of all subscriptions received from investors in Equity Fund I,   AA Capital agreed to perform various management services for the investment fund.

51.     On November 1, 2004, AA Capital entered into a management agreement with Liquidity Management where, for an annual fee of 1% of all subscriptions received from

investors in Equity Fund II, AA Capital agreed to perform various management services for the investment fund.

52.    From August 19, 2002 to August 31, 2006, AA Capital received management fees from Equity Fund I and Equity Fund II, but in violation of its investment management agreements with the Detroit Carpenters Plan, Operating Engineers Plan, Millwrights Plan and Michigan Teamsters Plan defendants AA Capital, Orecchio and Stevens did not reduce the investment management fees AA Capital charged said ERISA Plans by the amount of fees AA Capital received from Equity Fund I and Equity Fund II as a result of AA Capital's investment of the ERISA Plans' assets in these investment funds.

## Imprudent Investment in Xyience Inc.

53.    On or about March 29, 2006, Orecchio, acting on behalf of AA Capital, established the Brush Monroe Partners, LP ("Brush Monroe"),  a limited partnership created solely to invest in and purchase securities from Xyience, Inc. ("Xyience"), a privately held Nevada corporation which manufactures and sells food, vitamins, and beverages.  Despite operating under the name Brush Monroe, the partnership's operating agreement, under which the partnership was to be operated, was never executed.

54.    During the period from March 29, 2006 through September 5, 2006,  without conducting a prudent investigation of Brush Monroe or Brush Monroe's underlying investment strategy with respect to Xyience, defendants AA Capital,  Stevens, and Orecchio executed subscription agreements on behalf of the Detroit Carpenters and Operating Engineers plans and caused those plans to invest $32 million in plan assets in Brush Monroe.

55.     As a result of the investments of the plan assets of theDetroit Carpenters and Operating Engineers plans made by defendants AA Capital,  Stevens, and Orecchio's investments in Brush Monroe, those plans suffered losses.

## COUNT ONE

### Expenditure of Plan Assets for Non-Plan Purposes

56.     The allegations contained in paragraphs 1 through 41, are hereby incorporated in this Count.

57**.**     By the conduct described in paragraphs 33 through 40 above, defendants Orecchio, Stevens, and AA Capital:

a.     failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.     caused the ERISA Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the ERISA Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D); and,

c.     acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

58.     By the conduct described in paragraphs 33 through 40 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

14

59.     By the conduct described in paragraph 41 above, defendant Liquidity

Management:

a.      failed to act solely in the interest of the participants and beneficiaries of the

ERISA Plans and for the exclusive purpose of providing benefits to participants and their

beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation

of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and,

b.      acted on behalf of a party whose interests were adverse to the interests of the

ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA

§406(b)(2), 29 U.S.C. §1106(b)(2).

## COUNT TWO

### The Payment of Unauthorized fees

60.     The allegations contained in paragraphs 1 through 23, 27, 28 and 42 through 52,

are hereby incorporated in this Count.

61.     By the conduct described in paragraph 52 above, AA Capital, Orecchio, and

Stevens:

a.      failed to act solely in the interest of the participants and beneficiaries of

the ERISA Plans and for the exclusive purpose of providing benefits to participants and their

beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation

of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      failed to discharge their duty with respect to the plan in accordance with

the documents and instruments governing the Plan in violation of ERISA §404(a)(1)(D), 29

U.S.C. §1104(a)(1)(D); and

c.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

62.    By the conduct described in paragraphs 52 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

## COUNT THREE

## Imprudent Investment in Xyience, Inc.

63.    The allegations contained in paragraphs 1 through 23 and 53 through 55 are hereby incorporated in this Count.

68.    By the conduct described in paragraphs 54 through 55 above, AA Capital, Orecchio, and Stevens:

a.    failed to act solely in the interest of the participants and beneficiaries of the Detroit Carpenters plan and the Operating Engineers plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and,

b.    failed to discharge their duties with respect to the Detroit Carpenters plan and the Operating Engineers plan solely in the interests of plan participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

**A.**     Permanently enjoining all defendants from violating the provisions of Title I of ERISA, including participating in the violation of others;

**B.**     Ordering defendants AA Capital, Orecchio, Stevens, and Liquidity Management to restore all losses incurred by the ERISA Plans as a result of the violations of ERISA committed by them or for which they are liable, with appropriate interest;

**C.**     Requiring defendants AA Capital, Orecchio, Stevens, and Liquidity Management to disgorge all ill-gotten gains resulting from their violations of Title I of ERISA;

**D.**     Ordering defendants AA Capital, Orecchio, Stevens, and Liquidity Management to correct the prohibited transactions in which they engaged;

**E.**     Permanently enjoining defendants Orecchio and Stevens from serving as fiduciaries or service providers to any ERISA-covered employee benefit plan;

**F.**     After the completion of the court appointed receivership (Northern District of Illinois civil case no. 06CV-4859) for AA Capital, permanently enjoining defendants AA Capital and Liquidity Management from serving as fiduciaries or service providers to any ERISA-covered employee benefit plan;

**G.**     Awarding the Secretary the costs of this action; and

    **H.**      Ordering such further relief as is appropriate and just.

 

**GREGORY F. JACOB**
Solicitor of Labor

**JOAN E. GESTRIN**
Regional Solicitor

__/s Christine Heri_____
**CHRISTINE HERI**
Senior Trial Attorney

___/s Ruben R. Chapa_____
**RUBEN R. CHAPA**
Attorney

**ADDRESS:**

| | |
|---|---|
| Office of the Solicitor | U.S. Department of Labor, |
| U.S. Department of Labor | Attorneys for ELAINE L. CHAO |
| 230 South Dearborn Street | Secretary of Labor |
| Chicago, Illinois 60604 | Plaintiff |
| Telephone:  (312) 353-6993 | |

# EXHIBIT B

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| | : | |
| **ELAINE L. CHAO**, Secretary of Labor, | : | |
| United States Department of Labor, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | File No. 08 c 2029 |
| **AA CAPITAL PARTNERS, INC., JOHN ORECCHIO,** | : | |
| **MARY ELIZABETH STEVENS,** | : | Judge Gettleman |
| **AA CAPITAL LIQUIDITY MANAGEMENT, LLC,** | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

<u>**ORDER GRANTING THE SECRETARY'S MOTION FOR LEAVE
TO FILE HER FIRST AMENDED COMPLAINT**</u>

The Court, having conducted a hearing on the Secretary's Motion for Leave to File Her

First Amended Complaint, and for good cause shown,  HEREBY ORDERS THAT:

The Secretary's Motion is granted.  The Court authorizes the Secretary to file her First

Amended Complaint.


IT IS SO ORDERED:


_____
United States District Court Judge

DATED:_____