IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 08 CV 2029 |
| v. | ) ) | Judge Robert W. Gettleman |
| AA CAPITAL PARTNERS, INC., JOHN A. ORECCHIO, MARY ELIZABETH STEVENS, AA CAPITAL LIQUIDITY MANAGEMENT, LLC, | ) ) ) ) ) | |
| *Defendants.* | ) | |

### AA CAPITAL LIQUIDITY MANAGEMENT, LLC'S
### ANSWER TO FIRST AMENDED COMPLAINT

Defendant, AA CAPITAL LIQUIDITY MANAGEMENT, LLC, (hereinafter,

"Liquidity Management") by undersigned counsel answers Plaintiff's First Amended Complaint

(the "Amended Complaint") as follows:

### JURISDICTION AND VENUE

1.     This action arises under Title I of the Employee Retirement Income Security Act
of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., and is brought by the Secretary under
ERISA §§502(a)(2) and (5), 29 U.S.C. §§1132(a)(2) and (5), to enjoin acts and practices which
violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of
fiduciary duty under ERISA §409, 29 U.S.C. §1109, and to obtain such further equitable relief as
may be appropriate to redress the violations and to enforce the provisions of Title I of ERISA.

**ANSWER:**     Liquidity Management admits that the Secretary has brought claims to

enjoin acts and obtain equitable relief.  Liquidity Management denies that it has violated ERISA

and further denies that the Secretary is entitled to any of the relief sought in this action.  Except

as expressly admitted, Liquidity Management denies each and every remaining allegation in

Paragraph 1.

2.    This court has jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

**ANSWER:**    Paragraph 2 asserts legal conclusions to which an answer is not required.

3.    Venue of this action lies in the Northern District of Illinois, Eastern Division, pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because at all relevant times AA Capital Partners, Inc.[1] ("AA Capital") maintained business offices at 10 S. LaSalle, Suite 3712, Chicago, Illinois 60603, within this district and division.

**ANSWER:**    Paragraph 3 asserts legal conclusions to which an answer is not required.

Answering further, Liquidity Management admits that AA Capital had an office at 10 S. LaSalle,

Suite 3712, Chicago, Illinois 60603. Except as expressly admitted, Liquidity Management denies

each and every remaining allegation in Paragraph 3.

## THE DEFENDANTS

### AA Capital Partners, Inc.

4.    AA Capital is an investment management firm which was incorporated in Delaware in February 2002. AA Capital primarily provides investment management and advisory services to union pension funds and is a registered investment advisor under the Investment Advisors Act of 1940.

**ANSWER:**    On information and belief, Liquidity Management admits that AA Capital

is an investment management firm that was incorporated in the state of Delaware in February

2002. Answering further, Liquidity Management states that Paragraph 4 asserts legal conclusions

to which an answer is not required. Except as expressly admitted, Liquidity Management denies

any remaining allegations.

5.    AA Capital provided investment management and advisory services to employee benefit plans within the meaning of ERISA §3(3), 29 U.S.C. § 1002(3), including: the Carpenters Pension Trust Fund – Detroit and Vicinity ("Detroit Carpenters Plan"); the Operating Engineers

---

[1] An agreed order was entered by Judge Gettleman on September 13, 2006 (U.S. SEC v. AA Capital Partners, Inc., et al., Case No. 06-CV-04859, Document No. 22), appointing a Receiver for AA Capital Partners, Inc. and staying individuals from interfering with the Receiver's management of AA Capital's property and assets. It is the Secretary's position that her action, which is being filed pursuant to the Department of Labor's police and regulatory power under Title I of ERISA, does not violate Judge Gettleman's stay order.

524216.1

Local No. 324 Pension Fund ("Operating Engineers Plan"); the Michigan Regional Council of Carpenters Annuity Fund ("MRCC Plan"); the Millwrights' Local No. 1102 Supplemental Pension Fund ("Millwrights Plan"); and the Michigan Teamsters Joint Council #43 Pension Fund ("Michigan Teamsters Plan"). Collectively these plans will be referred to hereinafter as the "ERISA Plans."

**ANSWER:**   Paragraph 5 asserts legal conclusions to which an answer is not required.

On information and belief, Liquidity Management admits the factual allegations in Paragraph 5.


6.   Each of the ERISA Plans entered into an Investment Management Agreement or Qualified Plan Asset Manager Investment Management Agreement with AA Capital. Under these agreements AA Capital accepted its appointment as an investment manager under ERISA §3(38), 29 U.S.C. §1002(38), and as a fiduciary to each of the ERISA Plans.

**ANSWER:**   On information and belief, Liquidity Management admits that AA Capital

entered into agreements with the ERISA Plans.  Liquidity Management states that these

investment management agreements or qualified plan asset manager investment agreements

speak for themselves.  Answering further, Liquidity Management states that Paragraph 6 asserts

legal conclusions to which an answer is not required.


7.   In their agreements with AA Capital, the ERISA Plans granted AA Capital the authority to invest and disburse funds from the assets the ERISA Plans had given AA Capital control over, including the authority to invest plan assets into investment funds organized, managed or controlled by AA Capital.  At all relevant times, AA Capital exercised this investment and disbursement authority without consulting with, or seeking the approval of, the ERISA Plans' trustees.

**ANSWER:**   Liquidity Management states that any agreements between AA Capital

and the ERISA Plans speak for themselves.  Answering further, on information and belief,

Liquidity Management denies each and every factual allegation in Paragraph 7.


8.   At all relevant times, AA Capital had discretionary authority and control over the ERISA Plans' investments and the bank trust accounts AA Capital established in the name of each of the ERISA Plans to hold the ERISA Plans' assets until they were invested (hereinafter these accounts will be referred to as "bank trust accounts") and exercised that authority and control on a continuous basis.

**ANSWER:**     Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 8.

9.     As a result of its discretionary authority and control over the management of the
ERISA Plans' assets and investments, and its exercise of control over the management and
disposition of those assets and investments as set forth in paragraphs 4 through 8 above, AA
Capital was at all relevant times a fiduciary to the ERISA Plans within the meaning of ERISA
§3(21)(A)(i) and (iii), 29 U.S.C. §1002(21)(A)(i) and (iii); and, a party in interest to the ERISA
Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A).  As a service
provider to the ERISA Plans, AA Capital was also a party in interest to the ERISA Plans within
the meaning of ERISA §§3(14)(B), 29 U.S.C. §§1002(14)(B).

**ANSWER:**     Paragraph 9 asserts legal conclusions to which an answer is not required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

10.

### Officers of AA Capital

10.     At all relevant times, defendant John Orecchio ("Orecchio"), a co-owner of AA
Capital, served as the President and a Managing Director of AA Capital and served as a member
of the firm's Board of Directors.

**ANSWER:**     Liquidity Management admits that Orecchio was a co-owner of AA

Capital, served as the President and a Managing Director of AA Capital and served as a member

of the firm's Board of Directors, but lacks information sufficient to admit or deny whether

Orecchio held that status "at all relevant times."

11.     At all relevant times, defendant Mary Elizabeth Stevens ("Stevens"), served as the
Chief Financial Officer and Chief Compliance Officer of AA Capital.

**ANSWER:**     Liquidity Management admits that Stevens served as the Chief Financial

Officer and Chief Compliance Officer of AA Capital, but lacks information sufficient to admit or

deny whether Stevens held that status "at all relevant times."

12.     At all relevant times, AA Capital exercised the investment and disbursement
authority granted to it by the ERISA Plans through defendants Orecchio and Stevens.

524216.1

**ANSWER:**    On information and belief, Liquidity Management admits Orecchio and

Stevens were involved in investment and disbursement decisions on behalf of AA Capital, but

lacks information sufficient to admit or deny the remaining allegations in Paragraph 12.

13.    At all relevant times, defendants Orecchio and Stevens made investment decisions
with respect to the assets the ERISA Plans transferred to AA Capital pursuant to the Investment
Management Agreements the ERISA Plans had executed with AA Capital.

**ANSWER:**    On information and belief, Liquidity Management admits that Orecchio

and Stevens made investment decisions.  Answering further, Liquidity Management denies the

remaining allegations in Paragraph 13.

14.    At all relevant times, defendants Orecchio and Stevens exercised authority and
control over the investment and disbursement of funds from the ERISA Plans' bank trust
accounts.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 14.

15.    At all relevant times, defendants Orecchio and Stevens generally exercised
authority and control over the investments made by AA Capital on behalf of the ERISA Plans.

**ANSWER:**    On information and belief, Liquidity Management admits that Orecchio

and Stevens had some authority and control over investments made by AA Capital.  Answering

further, Liquidity Management lacks information sufficient to admit or deny the remaining

allegations in Paragraph 15.

16.    As a result of their exercise of control and authority over the investments of the
ERISA Plans' assets and the management and disposition of those assets as set forth in
paragraphs 10 through 15 above, defendants Orecchio and Stevens were fiduciaries of the
ERISA Plans within the meaning of ERISA §3(21)(A)(i) , 29 U.S.C. §1002(21)(A)(i); and,
parties in interest to the ERISA Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C.
§§1002(14)(A).  As officers of AA Capital, defendants Orecchio and Stevens were also parties in
interest to the ERISA Plans within the meaning of ERISA §§3(14)(H), 29 U.S.C. §§1002(14)(H).

**ANSWER:**    Paragraph 16 asserts legal conclusions to which an answer is not required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

16.

### AA Capital Liquidity Management, LLC

17.     Defendant AA Capital Liquidity Management, LLC ("Liquidity Management ") is a limited liability company which was organized in Illinois, Liquidity Management was formed to serve as the general partner for AA Capital Equity Fund II, LP ("Equity Fund II"), a limited partnership formed by AA Capital in January 2005. Equity Fund II's assets were invested in real estate loans and entities that developed real property.

**ANSWER:**     Liquidity Management admits the allegations in Paragraph 17.


18.     Pursuant to Equity Fund II's operating agreement, Liquidity Management was solely responsible for operating Equity Fund II and investing its assets.

**ANSWER:**     Liquidity Management states that Equity Fund II's operating agreement

speaks for itself.  Answering further, Liquidity Management denies each and every factual

allegation in Paragraph 18.


19.     At all relevant times, defendants Orecchio and Stevens were both part owners of Liquidity Management and served as the company's Secretary and Treasurer, respectively; defendant AA Capital served as the Investment Manager for Liquidity Management with respect to Equity Fund II.

**ANSWER:**     Liquidity Management admits that Orecchio and Stevens were both

formerly part owners of Liquidity Management and, for a period of time, served as the company's

Secretary and Treasurer, respectively.  Liquidity Management further admits that AA Capital

served as the Investment Manager for Liquidity Management with respect to Equity Fund II.

Answering further, Liquidity Management denies each and every other factual allegation in

Paragraph 19.


20.     At all relevant times, Liquidity Management exercised its investment and disbursement authority granted to it by Equity Fund II through defendants Orecchio and Stevens.

**ANSWER:**     Liquidity Management denies the allegations in Paragraph 20.

6

21.    In its capacity as investment manager, AA Capital invested assets of the Millwrights Plan and MRCC Plan in Equity Fund II.  As a result of these investments, the underlying assets of Equity Fund II constituted plan assets under ERISA.

**ANSWER:**    Paragraph 21 asserts legal conclusions to which an answer is not required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

21.


22.    At all relevant times, Liquidity Management had discretionary authority and control over the assets and investments of Equity Fund II, and exercised control over the management and disposition of those assets and investments.

**ANSWER:**    Liquidity Management denies the allegations of Paragraph 22.


23.    As a result of its discretionary control and authority over assets and investments of Equity Fund II and its exercise of control over the management and disposition of those assets and investments, defendant Liquidity Management was a fiduciary to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(21)(A)(i) , 29 U.S.C. §1002(21)(A)(i); and, a party in interest to the Millwrights Plan and MRCC Plan within the meaning of ERISA §3(14)(A), 29 U.S.C. §§1002(14)(A).

**ANSWER:**    Paragraph 23 asserts legal conclusions to which an answer is not required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

23.

## DEFENDANTS' VIOLATIONS OF ERISA

### Expenditure of Plan Assets for Non-Plan Purposes

24.    Pursuant to AA Capital's investment management agreements with the ERISA Plans, the assets committed by each plan were transferred directly to AA Capital and placed by AA Capital into separate bank trust accounts held in the name of each plan.

**ANSWER:**    Liquidity Management states that AA Capital's investment management

agreements speak for themselves.  Answering further, Liquidity Management states that it lacks

information sufficient to admit or deny the remaining allegations in Paragraph 24.


25.    At all relevant times, defendants Stevens and Orecchio were signatories on the ERISA Plans' bank trust accounts.

524216.1

**ANSWER:**    On information and belief, Liquidity Management admits that Stevens and

Orecchio were signatories on the ERISA Plans' bank trust accounts.  Answering further,

Liquidity Management states that it lacks information sufficient to admit or deny the remaining

allegations in Paragraph 25.


26.    The assets in the ERISA Plans' bank trust accounts were to be used by AA
Capital solely for investment purposes on behalf of the ERISA Plans or, when agreed upon, to
pay fees to AA Capital in accordance with the fee schedule set forth in the investment
management agreements.

**ANSWER:**    On information and belief, Liquidity Management admits that portions of

the ERISA Plans' bank trust accounts were to be used by AA Capital for investment purposes.

Answering further, Liquidity Management lacks information sufficient to admit or deny the

remaining allegations in Paragraph 26.


27.    Defendant AA Capital formed AA Capital Equity Fund I, LP ("Equity Fund I") in
August 2002, and AA Capital Equity Fund II ("Equity Fund II") in January 2005.

**ANSWER:**    Liquidity Management admits that Equity Fund I was formed in August

2002 and Equity Fund II was formed in January 2005.  Answering further, Liquidity

Management denies each and every remaining allegation in Paragraph 27.


28.    AA Capital Private Equity Investors Management, LLC ("Private Equity"), an
Illinois limited liability company, served as the general partner for Equity Fund I. Defendants
Orecchio and Stevens had partial ownership interests in Private Equity.  Orecchio served as
Private Equity's President and Secretary and was a member of its Board of Managers; defendant
AA Capital served as the Investment Manager for Private Equity with respect to Equity Fund I.

**ANSWER:**    On information and belief, Liquidity Management admits the allegations

in Paragraph 28.


29.    At all relevant times, Private Equity exercised its investment and disbursement
authority granted to it by Equity Fund I through defendants Orecchio and Stevens.

**ANSWER:**    Liquidity Management denies the allegations in Paragraph 29.

8

30.    At all relevant times, defendants AA Capital, Orecchio, and Stevens caused the ERISA Plans to invest plan assets in Equity Fund I and/or Equity Fund II. These investments were accomplished through the execution of subscription agreements executed by AA Capital on behalf of each ERISA Plan with respect to each investment vehicle.

**ANSWER:**    Liquidity Management admits that AA Capital executed certain

subscription agreements, but denies the remaining allegations in Paragraph 30.

31.    Pursuant to the subscription agreements, a specific amount of plan assets was committed for investment in either Equity Fund I, Equity Fund II, or both, on behalf of a specific ERISA Plan.

**ANSWER:**    Liquidity Management states that any subscription agreements speak for

themselves. Answering further, Liquidity Management denies each and every factual allegation

in Paragraph 31.

32.    Upon information and belief, although defendant AA Capital committed the ERISA Plans to specific dollar amounts for investment in Equity Fund I and/or Equity Fund II at the time the subscription agreements were executed, the assets in a given ERISA Plan's bank trust account were not transferred by defendants AA Capital, Orecchio or Stevens from that account to an account in the name of Equity Fund I or Equity Fund II until the investment fund's general partner issued a "capital call" to the investment fund's investors.

**ANSWER:**    On information and belief, Liquidity Management admits that AA Capital

committed the ERISA Plans to specific dollar amounts for investment. Answering further,

Liquidity Management lacks knowledge sufficient to admit or deny the remaining allegations in

Paragraph 32.

33.    Upon information and belief, once the investment funds' general partner issued a capital call to the ERISA Plans, defendants AA Capital, Stevens and Orecchio caused assets to be transferred from the ERISA Plans' bank trust accounts to meet these capital calls. The intended recipients of these assets were the investment funds.

**ANSWER:**    On information and belief, Liquidity Management admits that AA Capital,

once the investment funds' general partner issued a capital call to the ERISA plans, caused assets

to be transferred from the ERISA Plans' bank trust accounts. Answering further Liquidity

524216.1

Management lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph

33.

34.     Upon information and belief, Equity Fund I's and Equity Fund II's bank accounts
were zero balance accounts in which deposits were to be used for investments or to pay
legitimate operating expenses of the investment funds.

**ANSWER:**   Liquidity Management lacks knowledge sufficient to admit or deny the

allegations in Paragraph 34.

35.     Pursuant to the subscription agreements executed on behalf of the ERISA Plans,
money transferred from an ERISA Plan's bank trust account to a bank account held in the name
of Equity Fund I or Equity Fund II pursuant to a capital call could only be used by the investment
fund's general partner to make investments or to pay the investment fund's legitimate operating
expenses.

**ANSWER:**   Liquidity Management states that the subscription agreements speak for

themselves.  Answering further, Liquidity Management denies each and every factual allegation

in Paragraph 35.

36.     Between January 12, 2005 and July 14, 2006, defendants AA Capital, Orecchio
and Stevens caused Private Equity and Liquidity Management, respectively the general partners
for Equity Fund I and Equity Fund II, to issue over 170 capital calls, totaling over $33 million,
on behalf of the investment funds to the ERISA Plans.

**ANSWER:**   On information and belief, Liquidity Management denies the allegations in

Paragraph 36.

37.     Upon information and belief, instead of transferring all $33 million directly to
Equity Fund I and Equity Fund II, defendants AA Capital, Stevens and Orecchio caused
approximately $18 million to be transferred to AA Capital's general operating account to pay
for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm
owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las
Vegas, Nevada condominium in Orecchio's name.

**ANSWER:**   On information and belief, Liquidity Management denies the allegations

set forth in Paragraph 37.

10

38.    Upon information and belief, in partial response to the $33 million in capital calls, AA Capital, Stevens and Orecchio caused approximately $5.4 million to be transferred from the ERISA Plans' bank trust accounts to a bank account held in the name of Equity Fund I. Thereafter, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused these assets to thereafter be transferred to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

**ANSWER:**    On information and belief, Liquidity Management denies the allegations

set forth in Paragraph 38.


39.    Upon information and belief, in partial response to the $33 million in capital calls, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused approximately $2.5 million to be transferred from Equity Fund I's bank account to AA Capital's general operating account. These assets represented reductions from investment disbursements which were to be made directly by Private Equity from the assets of Equity Fund I to the ERISA Plans' bank trust accounts. Instead, the ERISA Plans received net investment disbursements that Orecchio, AA Capital and Stevens caused Private Equity to reduce by $2.5 million to meet capital calls.

**ANSWER:**    Liquidity Management denies the allegations set forth in Paragraph 39.


40.    Upon information and belief, in partial response to capital calls issued, defendants AA Capital, Orecchio and Stevens acting on behalf of Private Equity caused the $2.5 million in assets retained in Equity Fund I's bank account referred to in paragraph 39 to be transferred directly into AA Capital's general operating account where these assets were used to pay for, among other things, AA Capital's corporate operating expenses.

**ANSWER:**    Liquidity Management denies the allegations set forth in Paragraph 40.


41.    Upon information and belief, in partial response to capital calls issued, defendants Liquidity Management, AA Capital, Orecchio and Stevens permitted assets to be transferred from the MRCC Plan's and the Millwrights Plan's plan bank trust accounts to AA Capital to pay a portion of the capital calls. Liquidity Management credited these transfers against the outstanding investment commitments AA Capital had made on behalf of MRCC Plan and the Millwrights Plan in Equity Fund II, even though these assets were not used for the benefit of Equity Fund II.

**ANSWER:**    Liquidity Management denies the allegations set forth in Paragraph 41.

524216.1

**The Payment of Unauthorized fees**

42.    On August 19, 2002, AA Capital entered into an investment management agreement with the Detroit Carpenters Plan which provided that AA Capital would receive the following fees for providing services to the Detroit Carpenters Plan:

          a.    an annual management fee equal to 1% of the value of the assets under management; plus

          b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 42.

43.    The investment management agreement with the Detroit Carpenters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Detroit Carpenters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 43.

44.    On December 12, 2003, AA Capital entered into an investment management agreement with the Operating Engineers Plan which provided that AA Capital would receive the following fees for providing services to the Operating Engineers Plan:

          a.    an annual management fee equal to .75% of the value of the assets under management; plus

          b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 44.

45.    The investment management agreement with the Operating Engineers Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Operating Engineers Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

524216.1

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 45.


46.    In November 2004, AA Capital entered into an investment management agreement
with the Millwrights Plan which provided that AA Capital would receive the following fees for
providing services to the Millwrights Plan:

    a.    an annual management fee equal to 1% of the value of the assets under
management; plus

    b.    out-of pocket costs and expenses incurred in connection with services
rendered (excluding any overhead costs and expenses of AA Capital).

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 46.


47.    The investment management agreement with the Millwrights Plan also provided
that the annual management fee was to be reduced by the amount of any fee paid by the
Millwrights Plan that is attributable to any investment by the plan in Equity Fund I or Equity
Fund II.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 47.


48.    On June 1, 2004, AA Capital entered into an investment management agreement
with the Michigan Teamsters Plan which provided that AA Capital would receive the following
fees for providing services to the Michigan Teamsters Plan:

    a.    an annual management fee equal to 1% of the value of the assets under
management; plus

    b.    out-of pocket costs and expenses incurred in connection with services
rendered (excluding any overhead costs and expenses of AA Capital).

    **ANSWER:**    Liquidity Management lacks information sufficient to admit or

deny the allegations in Paragraph 48.


49.    The investment management agreement with the Michigan Teamsters Plan also
provided that the annual management fee was to be reduced by the amount of any fee paid by the
Michigan Teamsters Plan that is attributable to any investment by the plan in Equity Fund I or

13

Equity Fund II.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 49.


50.    On July 1, 2002, AA Capital entered into a management agreement with Private
Equity under which, for an annual fee between 1% and 1.25% of all subscriptions received from
investors in Equity Fund I, AA Capital agreed to perform various management services for the
investment fund.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 50.


51.    On November 1, 2004, AA Capital entered into a management agreement with
Liquidity Management where, for an annual fee of 1% of all subscriptions received from
investors in Equity Fund II, AA Capital agreed to perform various management services for the
investment fund.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 51.


52.    From August 19, 2002 to August 31, 2006, AA Capital received management fees
from Equity Fund I and Equity Fund II, but in violation of its investment management
agreements with the Detroit Carpenters Plan, Operating Engineers Plan, Millwrights Plan and
Michigan Teamsters Plan defendants AA Capital, Orecchio and Stevens did not reduce the
investment management fees AA Capital charged said ERISA Plans by the amount of fees AA
Capital received from Equity Fund I and Equity Fund II as a result of AA Capital's investment of
the ERISA Plans' assets in these investment funds.

**ANSWER:**    Liquidity Management admits that AA Capital received management fees.

Answering further, Liquidity Management lacks information sufficient to admit or deny the

remaining allegations in Paragraph 52.


53.    On or about March 29, 2006, Orecchio, acting on behalf of AA Capital,
established the Brush Monroe Partners, LP ("Brush Monroe"), a limited partnership created
solely to invest in and purchase securities from Xyience, Inc. ("Xyience"), a privately held
Nevada corporation which manufactures and sells food, vitamins, and beverages. Despite
operating under the name Brush Monroe, the partnership's operating agreement, under which the
partnership was to be operated, was never executed.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 53.

54.    During the period from March 29, 2006 through September 5, 2006, without
conducting a prudent investigation of Brush Monroe or Brush Monroe's underlying investment
strategy with respect to Xyience, defendants AA Capital, Stevens, and Orecchio executed
subscription agreements on behalf of the Detroit Carpenters and Operating Engineers plans and
caused those plans to invest $32 million in plan assets in Brush Monroe.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 54.

55.    As a result of the investments of the plan assets of the Detroit Carpenters and
Operating Engineers plans made by defendants AA Capital, Stevens, and Orecchio's investments
in Brush Monroe, those plans suffered losses.

**ANSWER:**    Liquidity Management lacks information sufficient to admit or deny the

allegations in Paragraph 55.

**COUNT ONE**

**Expenditure of Plan Assets for Non-Plan Purposes**

56.    The allegations contained in paragraphs 1 through 41, are hereby incorporated in
this Count.

**ANSWER:**    Liquidity Management incorporates its answers to Paragraphs 1 through

41.

57.    By the conduct described in paragraphs 33 through 40 above, defendants
Orecchio, Stevens, and AA Capital:

a.    failed to act solely in the interest of the participants and beneficiaries of
the ERISA Plans and for the exclusive purpose of providing benefits to participants and their
beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation
of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.    caused the ERISA Plans to engage in transactions which they knew or
should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a
party in interest, of assets of the ERISA Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C.
§1106(a)(1)(D); and,

15

c.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

**ANSWER:**    Paragraph 54 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

54.

58.    By the conduct described in paragraphs 33 through 40 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

**ANSWER:**    Paragraph 55 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

55.

59.    By the conduct described in paragraph 41 above, defendant Liquidity Management:

a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and,

b.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

**ANSWER:**    Paragraph 56 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

56.

## COUNT TWO

### The Payment of Unauthorized fees

60.    The allegations contained in paragraphs 1 through 23, 27, 28 and 42 through 52, are hereby incorporated in this Count.

**ANSWER:**    Liquidity Management incorporates its answers to Paragraphs 1 through

16

23, 27, 28 and 42 through 52.

61.    By the conduct described in paragraph 52 above, AA Capital, Orecchio, and Stevens:

      a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.    failed to discharge their duty with respect to the ERISA Plans in accordance with the documents and instruments governing the ERISA Plans in violation of ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D); and

      c.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

**ANSWER:**    Paragraph 58 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

58.

62.    By the conduct described in paragraphs 52 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

**ANSWER:**    Paragraph 59 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

59.

## COUNT THREE

### Imprudent Investment in Xyience, Inc.

63.    The allegations contained in paragraphs 1 through 23 and 53 through 55 are hereby incorporated in this Court.

**ANSWER:**    Liquidity Management incorporates its answer to Paragraphs 1 through 23 and 55.

17

64.    By the conduct described in paragraphs 54 through 55 above, AA Capital, Orecchio, and Stevens:

a.    Failed the act solely in the interest of the participants and beneficiaries of the Detroit Carpenters plan and the Operating Engineers plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and,

b.    Failed to discharge their duties with respect to the Detroit Carpenters plan and the Operating Engineers plan solely in the interests of plan participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

**ANSWER:**    Paragraph 64 asserts legal conclusions to which no answer is required.

Answering further, Liquidity Management denies each and every factual allegation in Paragraph

64.


July 25, 2008                                    Respectfully submitted,

                                                **AA CAPITAL LIQUIDITY MANAGEMENT,
                                                LLC**


                                                By:  /s/ Michael P. Conway
                                                     One of Its Attorneys

Michael P. Conway
Matthew I. Hafter
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois  60606
(312) 704-7700


                                                18

## CERTIFICATE OF SERVICE

I, Michael P. Conway, an attorney, hereby certifies that on July 25, 2008, I caused a true and correct copy of the foregoing **AA CAPITAL LIQUIDITY MANAGEMENT, LLC'S ANSWER TO FIRST AMENDED COMPLAINT** to be served via Electronic Mail Transmission via ECF as to Filing Users upon the following:

Henry M. Baskerville
Joseph J. Duffy
William P. Ziegelmueller
STETLER & DUFFY, LTD.
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200
hbasker@stetleranddduffy.com
jduffy@stetleranddduffy.com
bziegel@stetleranddduffy.com

Ruben Richard Chapa
Christine Zuehlke Heri
U.S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
230 South Dearborn St., 8th Floor
Chicago, IL 60604
(312) 353-5709
chapa.ruben@dol.gov
heri.christine@dol.gov

Peter B. Shaeffer
30 N. LaSalle Street
Suite 2140
Chicago, IL 60602
pshaefflaw@aol.com

/s/ Michael P. Conway