IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

ELAINE L. CHAO, Secretary of Labor,           )
United States Department of Labor,            )
                                              )
    Plaintiff,                                )
                                              )       CIVIL ACTION
    v.                                        )
                                              )       File No. 08-2029
AA CAPITAL PARTNERS, INC.,                    )
JOHN ORECCHIO,                                )       Judge  Gettleman
MARY ELIZABETH STEVENS, and                   )
AA CAPITAL LIQUIDITY MANAGEMENT, LLC;         )
                                              )
    Defendants.                               )
                                              )
_____      )

**ANSWER OF MARY ELIZABETH STEVENS
TO FIRST AMENDED COMPLAINT**

    Defendant, Mary Elizabeth Stevens ("Stevens") states the following as her Answer to the allegations of the First Amended Complaint:

**JURISDICTION AND VENUE**

    1.    This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. 1001, et seq, and is brought by the Secretary under ERISA  5O2(a)(2) and (5),  29 U.S.C. 1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA 409, 29 U.S.C. 1109, and to obtain such further equitable relief as may be appropriate to redress the violations and to enforce the provisions of Title I of ERISA.

**Answer:**

Stevens admits that this action as alleged, arises under 29 U.S.C. 1001 et seq., and is brought by Plaintiff under 29 U.S.C. 1132(a)(2) and (5). Stevens denies that Plaintiff is entitled to the relief it requests.

2.    This court has jurisdiction over this action pursuant to ERISA 502(e)(1), 29 U.S.C. 1132(e)(1).

**Answer:**

Admitted.

3.    Venue of this action lies in the Northern District of Illinois, Eastern Division, pursuant to ERISA 502(e)(2), 29 U.S.C.) 1132(e)(2), because at all relevant times AA Capital Partners, Inc. ("AA Capital") maintained business offices at 10 S. LaSalle, Suite 3712, Chicago, Illinois 60603, within this district and division.

**Answer:**

Admitted.

## THE DEFENDANTS

### AA Capital Partners, Inc.

4.    AA Capital is an investment management firm which was incorporated in Delaware in February 2002. AA Capital primarily provides investment management and advisory services to union pension funds and is a registered investment advisor under the Investment Advisors Act of 1940.

**Answer**:

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations, except that Stevens admits that AA Capital was incorporated in Delaware in February 2002, and that in and prior to September 2006, AA Capital engaged in business as a registered investment adviser with clients including union pension funds.

5.    AA Capital provided investment management and advisory services to employee benefit plans within the meaning of ERISA 3(3), 29 U.S.C. §1002(3), including: the Carpenters Pension Trust Fund — Detroit and Vicinity ("Detroit Carpenters Plan"); the Operating Engineers Local No. 324 Pension Fund ("Operating Engineers Plan"); the Michigan Regional Council of Carpenters Annuity Fund ("MRCC Plan"); the Millwrights' Local No. 1102 Supplemental Pension Fund ("Millwrights Plan"); and the Michigan Teamsters Joint Council #43 Pension Fund ("Michigan Teamsters Plan"). Collectively these plans will be referred to hereinafter as the "ERISA Plans".

**<u>Answer:</u>**

Paragraph 5 contains legal conclusions to which no answer is required.  Stevens admits that the "ERISA Plans" alleged in paragraph 5 were clients of AA Capital. Stevens is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

6.    Each of the ERISA Plans entered into an Investment Management Agreement or Qualified Plan Asset Manager Investment Management Agreement with AA Capital. Under these agreements AA Capital accepted its appointment as an investment manager under ERISA §3(38), 29 U.S.C. § 1002(38), and as a fiduciary to each of the ERISA Plans.

**<u>Answer:</u>**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations.  To the extent a further response is deemed to be required, Stevens refers to any alleged contract or agreement, and denies any allegations inconsistent with such contract or agreement.

7.    In their agreements with AA Capital, the ERISA Plans granted AA Capital the authority to invest and disburse funds from the assets the ERISA Plans had given AA Capital control over, including the authority to invest plan assets into investment funds organized, managed or controlled by AA Capital. At all relevant times, AA Capital exercised this investment and disbursement authority without consulting with, or seeking the approval of, the ERISA Plans' trustees.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations. To the extent a further response is deemed to be required, Stevens refers to any alleged contract or agreement, and denies any allegations inconsistent with such contract or agreement.

8.    At all relevant times, AA Capital had discretionary authority and control over the ERISA Plans' investments and the bank trust accounts AA Capital established in the name of each of the ERISA Plans to hold the ERISA Plans' assets until they were invested (hereinafter these accounts will be referred to as "bank trust accounts") and exercised that authority and control on a continuous basis.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations.

9.    As a result of its discretionary authority and control over the management of the ERISA Plans' assets and investments, and its exercise of control over the management and disposition of those assets and investments as set forth in paragraphs 4 through 8 above, AA Capital was at all relevant times a fiduciary to the ERISA Plans within the meaning of ERISA 3(21)(A)(i) and (iii) , 29 U.S.C. 1002(21)(A)(i) and (iii); and, a party in interest to the ERISA Plans within the meaning of ERISA  3(14)(A), 29 U.S.C. 1002(l4)(A).  As a service provider to the ERISA Plans, AA Capital was also a party in interest to the ERISA Plans within the meaning of ERISA 3(14)(B), 29 U.S.C. 1002(14)(B).

**Answer**

Paragraph 9 alleges conclusions of law to which no answer is required.  With respect to any allegations of fact, Stevens incorporates her answers to paragraphs 4 through 8 above.  Stevens denies any remaining allegation of fact.

## Officers of AA Capital

10.    At all relevant times, defendant John Orecchio ("Orecchio"), a co-owner of AA Capital, served as the President and a Managing Director of AA Capital and served as a member of the firm's Board of Directors.

**Answer**.

Stevens admits that Orecchio was a co-owner of AA Capital, its President, a Managing Director of AA Capital and a member of the Board of Directors of AA Capital. Stevens is without knowledge or information to form a belief as to the truth of the remaining allegations.

11.    At all relevant times, defendant Mary Elizabeth Stevens ("Stevens"), served as the Chief Financial Officer and Chief Compliance Officer of AA Capital.

**Answer.**

Stevens admits that she had the title of Chief Financial Officer and Chief Compliance Officer of AA Capital.  Stevens denies that at all times she served as Chief Financial Officer and Chief Compliance Officer of AA Capital.  Stevens is without knowledge or information to form a belief as to the truth of the remaining allegations.

12.    At all relevant times, AA Capital exercised the investment and disbursement authority granted to it by the ERISA Plans through defendants Orecchio and Stevens.

**Answer:**

Denied.

13.    At all relevant times, defendants Orecchio and Stevens made investment decisions with respect to the assets the ERISA Plans transferred to AA Capital pursuant to the Investment Management Agreements the ERISA Plans had executed with AA Capital.

**Answer:**

Denied.

14.    At all relevant times, defendants Orecchio and Stevens exercised authority and control over the investment and disbursement of funds from the ERISA Plans' bank trust accounts.

**Answer:**

      Denied.

      15.    At all relevant times, defendants Orecchio and Stevens generally exercised authority and control over the investments made by AA Capital on behalf of the ERISA Plans.

**Answer:**

      Denied.

      16.    As a result of their exercise of control and authority over the investments of the ERISA Plans assets and the management and disposition of those assets as set forth in paragraphs 10 through 15 above, defendants Orecchio and Stevens were fiduciaries of the ERISA Plans within the meaning of ERISA 3(21)(A)(i),  29 U.S.C. 1002(21)(A)(i); and, parties in interest to the ERISA Plans within the meaning of ERISA 3(14)(A), 29 U.S.C. l002(14)(A). As officers of AA Capital, defendants Orecchio and Stevens were also parties in interest to the ERISA Plans within the meaning of ERISA 3(l4)(H), 29 U.S.C. l002(l4)(H).

**Answer:**

      Paragraph 16 alleges conclusions of law to which no answer is required.  With

respect to any allegations of fact, Stevens incorporates her answers to paragraphs 10

through 15 above.  Stevens denies any remaining allegation of fact.

### AA Capital Liquidity Management, LLC

      17.    Defendant AA Capital Liquidity Management, LLC ("Liquidity Management") is a limited liability company which was organized in Illinois. Liquidity Management was formed to serve as the general partner for AA Capital Equity Fund II, LP ("Equity Fund II"), a limited partnership formed by AA Capital in January 2005. Equity Fund II's assets were invested in real estate loans and entities that developed real property.

**Answer:**

      Stevens admits the allegations in the first and second sentences of paragraph 17.

Stevens is without knowledge or information sufficient to form a belief as to the truth of

the allegations in the third sentence.

18.     Pursuant to Equity Fund II's operating agreement, Liquidity Management was solely responsible for operating Equity Fund II and investing its assets.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations.  To the extent a further response is deemed to be required, Stevens refers to any alleged operating agreement, and denies any allegation inconsistent with such operating agreement.

19.     At all relevant times, defendants Orecchio and Stevens were both part owners of Liquidity Management and served as the company's Secretary and Treasurer, respectively; defendant AA Capital served as the Investment Manager for Liquidity Management with respect to Equity Fund II.

**Answer:**

Stevens admits that she and Orecchio were each part owners, with others, of Liquidity Management.  Stevens admits that she had the title of Treasurer of Liquidity Management.  The allegation concerning "Investment Manager" as a term defined in 29 U.S.C. 1002(38) is a legal conclusion to which no response is required.  To the extent a further response is deemed to be required, Stevens refers to any contract or agreement between AA Capital and Liquidity Management, and denies any allegation inconsistent with such contract or agreement.

20.     At all relevant times, Liquidity Management exercised its investment and disbursement authority granted to it by Equity Fund II through defendants Orecchio and Stevens.

**Answer:**

Denied.

21.     In its capacity as investment manager, AA Capital invested assets of the Millwrights Plan and MRCC Plan in Equity Fund II. As a result of these investments, the underlying assets of Equity Fund II constituted plan assets under ERISA.

**Answer:**

Paragraph 21 contains legal conclusions to which no answer is required. Stevens admits that assets of the Millwrights Plan and MRCC Plan were invested in Equity Fund II. Stevens denies the remaining factual allegations.

22.     At all relevant times, Liquidity Management had discretionary authority and control over the assets and investments of Equity Fund II, and exercised control over the management and disposition of those assets and investments.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations.

23.     As a result of its discretionary control and authority over assets and investments of Equity Fund II and its exercise of control over the management and disposition of those assets and investments, defendant Liquidity Management was a fiduciary to the Millwrights Plan and MRCC Plan within the meaning of ERISA 3(21)(A)(i), 29 U.S.C. 1002(21)(A)(i); and, a party in interest to the Millwrights Plan and MRCC Plan within the meaning of ERISA 3(l4)(A), 29 U.S.C. l002(l4)(A).

**Answer:**

Paragraph 23 alleges conclusions of law to which no answer is required. With respect to any allegations of fact, Stevens incorporates her answers to paragraphs 20 through 22 above. Stevens denies any remaining allegation of fact.

## DEFENDANTS' VIOLATIONS OF ERISA

### Expenditure of Plan Assets for Non-Plan Purposes

24.     Pursuant to AA Capital's investment management agreements with the ERISA Plans, the assets committed by each plan were transferred directly to AA Capital and placed by AA Capital into separate bank trust accounts held in the name of each plan.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the truth of the allegations, and Stevens denies any allegation of fact which is inconsistent with the terms of any agreement alleged in paragraph 24.

25.    At all relevant times, defendants Stevens and Orecchio were signatories on the ERISA Plans' bank trust accounts.

**Answer:**

Stevens admits that she was a signatory and that Orecchio was a signatory on the

following bank accounts:

| Name of Bank | Account No. | Account Name |
|---|---|---|
| LaSalle Bank Midwest | 400015.1 | AA Capital Partners Investor A (Carpenters) |
| LaSalle Bank Midwest | 400015.3 | AA Capital Partners Operating Engineers |
| LaSalle Bank Midwest | 400015.4 | AA Capital Partners Teamsters |
| LaSalle Bank Midwest | 400015.5 | AA Capital Partners MRCC Annuity |
| Lakeside Community | 1101006532 | AA Capital Partners, Inc. - Millwrights |

Stevens is without knowledge or information to form a belief as to the truth of the

remaining allegations of fact.

26.    The assets in the ERISA Plans' bank trust accounts were to be used by AA Capital solely for investment purposes on behalf of the ERISA Plans or, when agreed upon, to pay fees to AA Capital in accordance with the fee schedule set forth in the investment management agreements.

**Answer**:

Stevens is without knowledge or information sufficient to form a belief as to the

truth of the allegations, and Stevens denies any allegation of fact which is inconsistent

with the governing contracts or agreements.

27.    Defendant AA Capital formed AA Capital Equity Fund I, LP ("Equity Fund I") in August 2002, and AA Capital Equity Fund II ("Equity Fund II") in January 2005.

**Answer:**

Admitted.

28.    AA Capital Private Equity Investors Management, LLC ("Private Equity"), an Illinois limited liability company, served as the general partner for Equity Fund I. Defendants Orecchio and Stevens had partial ownership interests in Private Equity. Orecchio served as Private Equity's President and Secretary and was a member of its Board of Managers; defendant AA Capital served as the Investment Manager for Private Equity with respect to Equity Fund I.

**Answer:**

Stevens admits the allegations of the first and second sentences of

paragraph 28, except that Private Equity was a Delaware limited liability company.

Stevens is without knowledge or information sufficient to form a belief as the truth of the

factual allegations contained in the third sentence concerning the positions of Orecchio.

The allegation in the third sentence concerning "Investment Manager" as a term defined

in 29 U.S.C. 1002(38) is a legal conclusion to which no response is required. To the

extent a further response is deemed to be required, Stevens refers to any contract or

agreement between AA Capital and Private Equity, and denies any allegation

inconsistent with such contract or agreement.

29.    At all relevant times, Private Equity exercised its investment and disbursement authority granted to it by Equity Fund I through defendants Orecchio and Stevens.

**Answer:**

Denied.

30.    At all relevant times, defendants AA Capital, Orecchio, and Stevens caused the ERISA Plans to invest plan assets in Equity Fund I and/or Equity Fund II. These investments were accomplished through the execution of subscription agreements executed by AA Capital on behalf of each ERISA Plan with respect to each investment vehicle.

**Answer:**

Stevens denies the allegations of the first sentence. Stevens is without sufficient

knowledge or information to form a belief as to the truth of the allegations in the second

sentence.  Stevens denies any fact allegation inconsistent with the terms of any

subscription agreement alleged in paragraph 30.

31.    Pursuant to the subscription agreements, a specific amount of plan assets was committed for investment in either Equity Fund I, Equity Fund II, or both, on behalf of a specific ERISA Plan.

**Answer**:

Stevens denies any fact allegation inconsistent with the terms of any subscription

agreement alleged in paragraph 30.  Stevens is without sufficient knowledge or

information to form a belief as to the truth of any remaining allegations.

32.    Upon information and belief, although defendant AA Capital committed the ERISA Plans to specific dollar amounts for investment in Equity Fund I and/or Equity Fund II at the time the subscription agreements were executed, the assets in a given ERISA Plan's bank trust account were not transferred by defendants AA Capital, Orecchio or Stevens from that account to an account in the name of Equity Fund I or Equity Fund II until the investment fund's general partner issued a "capital call" to the investment fund's investors.

**Answer:**

Stevens is without sufficient knowledge or information to form a belief as to the

truth of the allegations.

33.    Upon information and belief, once the investment funds' general partner issued a capital call to the ERISA Plans, defendants AA Capital, Stevens and Orecchio caused assets to be transferred from the ERISA Plans' bank trust accounts to meet these capital calls. The intended recipients of these assets were the investment funds.

**Answer:**

Stevens is without sufficient knowledge or information to form a belief as to the

truth of the allegations.

34.    Upon information and belief, Equity Fund I's and Equity Fund II's bank accounts were zero balance accounts in which deposits were to be used for investments or to pay legitimate operating expenses of the investment funds.

**Answer:**

Denied.

35.    Pursuant to the subscription agreements executed on behalf of the ERISA Plans, money transferred from an ERISA Plan's bank trust account to a bank account held in the name of Equity Fund I or Equity Fund II pursuant to a capital call could only be used by the investment fund's general partner to make investments or to pay the investment fund's legitimate operating expenses.

**Answer:**

Stevens is without sufficient knowledge or information to form a belief as to the

truth of the allegations, and Stevens denies any allegation which is inconsistent with the

terms of the subscription agreements alleged in paragraph 35.

36.    Between May 19, 2004 and July 14, 2006, defendants AA Capital, Orecchio and Stevens caused Private Equity and Liquidity Management, respectively the general partners for Equity Fund I and Equity Fund II, to issue hundreds of capital calls on behalf of the investment funds to the ERISA Plans.

**Answer**

Stevens is without sufficient knowledge or information to form a belief as to the

truth of the allegations.

37.    Upon information and belief, instead of transferring all capital call payments directly to Equity Fund I and Equity Fund II, defendants AA Capital, Stevens and Orecchio caused approximately $18.6 million to be transferred from the ERISA Plans' bank trust accounts to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

**Answer:**

Stevens is without knowledge of information to form a belief as to the truth of the

allegations, except that Stevens denies that Stevens caused funds to be transferred to AA

Capital's general operating account  for the purpose of paying for renovations of a horse

farm owned by Orecchio, renovation of a strip club operated by Orecchio or the purchase

of a Las Vegas, Nevada condominium in Orecchio's name.

38.    Upon information and belief, in partial response to the capital calls issued, AA Capital, Stevens and Orecchio caused approximately $1.1 million to be transferred from the ERISA Plans' bank trust accounts to bank accounts held in the name of Equity Fund I and Equity Fund II. Thereafter, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity and Liquidity Management caused these assets to thereafter be transferred to AA Capital's general operating account to pay for, among other things, AA Capital's corporate operating expenses, renovations of a horse farm owned by Orecchio, renovation of a strip club operated by Orecchio and the purchase of a Las Vegas, Nevada condominium in Orecchio's name.

**Answer:**

Stevens is without knowledge of information to form a belief as to the truth of the

allegations, except that Stevens denies that Stevens caused funds to be transferred to AA

Capital's general operating account for the purpose of paying for renovations of a horse

farm owned by Orecchio, renovation of a strip club operated by Orecchio or the purchase

of a Las Vegas, Nevada condominium in Orecchio's name.

39.    Upon information and belief, in partial response to capital calls issued, defendants AA Capital, Stevens and Orecchio acting on behalf of Private Equity caused approximately $2.5 million to be transferred from Equity Fund I's bank account to AA Capital's general operating account. These assets represented reductions from investment disbursements which were to be made directly by Private Equity from the assets of Equity Fund I to the ERISA Plans' bank trust accounts.  Instead, the ERISA Plans received net investment disbursements that Orecchio, AA Capital and Stevens caused Private Equity to reduce by $2.5 million to meet capital calls.

**Answer:**

Stevens is without knowledge of information to form a belief as to the truth of the

allegations

.

40.    Upon information and belief, in partial response to capital calls issued, defendants AA Capital, Orecchio and Stevens acting on behalf of Private Equity caused the $2.5 million in assets retained in Equity Fund I's bank account referred to in

paragraph 39 to be transferred directly into AA Capital's general operating account where these assets were used to pay for, among other things, AA Capital's corporate operating expenses.

**Answer:**

      Stevens is without knowledge of information to form a belief as to the truth of the

allegations.

      41.     Upon information and belief, in partial response to capital calls issued, defendants Liquidity Management, AA Capital, Orecchio and Stevens permitted assets to be transferred from the MRCC Plan's and the Millwrights Plan's plan bank trust accounts to AA Capital to pay a portion of the capital calls. Liquidity Management credited these transfers against the outstanding investment commitments AA Capital had made on behalf of MRCC Plan and the Millwrights Plan in Equity Fund II, even though these assets were not used for the benefit of Equity Fund II.

**Answer:**

      Stevens is without knowledge of information to form a belief as to the truth of the

allegations.

### The Payment of Unauthorized fees

      42.     On August 19, 2002, AA Capital entered into an investment management agreement with the Detroit Carpenters Plan which provided that AA Capital would receive the following fees for providing services to the Detroit Carpenters Plan:

          a.     an annual management fee equal to 1 % of the value of the assets under management; plus

          b.     out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

**Answer:**

      Stevens denies any fact allegation inconsistent with the terms of any investment

management agreement alleged in paragraph 42. Stevens is without sufficient knowledge

or information to form a belief as to the truth of any remaining allegations.

43.    The investment management agreement with the Detroit Carpenters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Detroit Carpenters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment management agreement alleged in paragraph 43.  Stevens is without sufficient knowledge or information to form a belief as to the truth of any remaining allegations.

44.    On  December 12, 2003, AA Capital entered into an investment management agreement with the Operating Engineers Plan which provided that AA Capital would receive the following fees for providing services to the Operating Engineers Plan:

a.    an annual management fee equal to .75% of the value of the assets under management; plus

b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment management agreement alleged in paragraph 44.  Stevens is without sufficient knowledge or information to form a belief as to the truth of any remaining allegations.

45.    The investment management agreement with the Operating Engineers Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Operating Engineers Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment management agreement alleged in paragraph 45.  Stevens is without sufficient knowledge or information to form a belief as to the truth of any remaining allegations.

46.    In November 2004, AA Capital entered into an investment management agreement with the Millwrights Plan which provided that AA Capital would receive the following fees for providing services to the Millwrights Plan:

        a.    an annual management fee equal to 1% of the value of the assets under management; plus

        b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capita!).

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment

management agreement alleged in paragraph 46.  Stevens is without sufficient knowledge

or information to form a belief as to the truth of any remaining allegations.

47.    The investment management agreement with the Millwrights Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Millwrights Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment

management agreement alleged in paragraph 47.  Stevens is without sufficient knowledge

or information to form a belief as to the truth of any remaining allegations.

48.    In June 1, 2004, AA Capital entered into an investment management agreement with the Michigan Teamsters Plan which provided that AA Capital would receive the following fees for providing services to the Michigan Teamsters Plan:

        a.    an annual management fee equal to 1% of the value of the assets under management; plus

        b.    out-of pocket costs and expenses incurred in connection with services rendered (excluding any overhead costs and expenses of AA Capital).

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment

management agreement alleged in paragraph 48.  Stevens is without sufficient knowledge

or information to form a belief as to the truth of any remaining allegations.

49.     The investment management agreement with the Michigan Teamsters Plan also provided that the annual management fee was to be reduced by the amount of any fee paid by the Michigan Teamsters Plan that is attributable to any investment by the plan in Equity Fund I or Equity Fund II.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any investment

management agreement alleged in paragraph 49.  Stevens is without sufficient knowledge

or information to form a belief as to the truth of any remaining allegations.

50.     On July 1, 2002, AA Capital entered into a management agreement with Private Equity under which, for an annual fee between 1% and 1.25% of all subscriptions received from investors in Equity Fund I, AA Capital agreed to perform various management services for the investment fund.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any management

agreement alleged in paragraph 50.  Stevens is without sufficient knowledge or

information to form a belief as to the truth of any remaining allegations.

51.     On November 1, 2004, AA Capital entered into a management agreement with Liquidity Management where, for an annual fee of 1% of all subscriptions received from investors in Equity Fund II, AA Capital agreed to perform various management services for the investment fund.

**Answer:**

Stevens denies any fact allegation inconsistent with the terms of any management

agreement alleged in paragraph 51. Stevens is without sufficient knowledge or

information to form a belief as to the truth of any remaining allegations.

52.    From August 19, 2002 to August 31, 2006, AA Capital received
management fees from Equity Fund I and Equity Fund II, but in violation of its
investment management agreements with the Detroit Carpenters Plan, Operating
Engineers Plan, Millwrights Plan and Michigan Teamsters Plan defendants AA Capital,
Orecchio and Stevens did not reduce the investment management fees AA Capital
charged said ERISA Plans by the amount of fees AA Capital received from Equity Fund I
and Equity Fund II as a result of AA Capital's investment of the ERISA Plans' assets in
these investment funds.

**Answer:**

Paragraph 52 alleges conclusions of law to which no answer is required.

Stevens admits that AA Capital received management fees from Equity Fund I and

Equity Fund II. Stevens is without knowledge or information sufficient to form a belief

as to the truth of the remaining factual allegations.

### Imprudent Investment in Xyience Inc.

53.    On or about March 29, 2006, Orecchio, acting on behalf of AA Capital,
established the Brush Monroe Partners, LP ("Brush Monroe"), a limited partnership
created solely to invest in and purchase securities from Xyience, Inc. ("Xyience"), a
privately held Nevada corporation which manufactures and sells food, vitamins, and
beverages. Despite operating under the name Brush Monroe, the partnership's operating
agreement, under which the partnership was to be operated, was never executed.

**Answer:**

Stevens is without knowledge or information sufficient to form a belief as to the

allegations, except that Stevens admits that Xyience, Inc. engaged in the business activity

alleged in paragraph 53.

54.    During the period from March 29, 2006 through September 5, 2006, without conducting a prudent investigation of Brush Monroe or Brush Monroe's underlying investment strategy with respect to Xyience, defendants AA Capital, Stevens, and Orecchio executed subscription agreements on behalf of the Detroit Carpenters and Operating Engineers plans and caused those plans to invest $32 million in plan assets in Brush Monroe.

**Answer:**

Paragraph 54 alleges conclusions of law to which no answer is required.  Stevens

is without knowledge or information sufficient  to form a belief as to the truth of the

factual allegations, except that Stevens denies that she caused any investments alleged in

paragraph 54.

55.    As a result of the investments of the plan assets of theDetroit Carpenters and Operating Engineers plans made by defendants AA Capital, Stevens, and Orecchio's investments in Brush Monroe, those plans suffered losses.

**Answer:**

Denied.

## COUNT ONE

### Expenditure of Plan Assets for Non-Plan Purposes

56.    The allegations contained in paragraphs 1 through 41, are hereby incorporated in this Count.

**Answer:**

Stevens incorporates by reference her answers to paragraphs 1 through 41, as

her answer to paragraph 56.

57.    By the conduct described in paragraphs 33 through 40 above, defendants Orecchio, Stevens, and AA Capital:

a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA 404(a)(1)(A),  29 U.S.C. 1104(a)(1)(A);

      b.      caused the ERISA Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the ERISA Plans, in violation of ERISA §406(a)(l)(D),  29 U.S.C. 1106(a)(1)(D); and,

      c.      acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA 406(b)(2), 29 U.S.C. 1106(b)(2).

**<u>Answer:</u>**

      Paragraph 57 asserts legal conclusions to which no answer is required.  Stevens denies all factual allegations.

    58.    By the conduct described in paragraphs 33 through 40 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA 406(b)(l),  29 U.S.C. 1l06(b)(1).

**<u>Answer:</u>**

      No allegations are made against Stevens in paragraph 58.

    59.    By the conduct described in paragraph 41 above, defendant Liquidity Management:

      a.      failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA 404(a)(l)(A),  29 U.S.C. 1104(a)(1)(A); and,

      b.      acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA 406(b)(2),  29 U.S.C. 1106(b)(2).

**<u>Answer:</u>**

      No allegations are made against Stevens in paragraph 59.

## COUNT TWO

### The Payment of Unauthorized fees

    60.    The allegations contained in paragraphs I through 23, 27, 28 and 42 through 52, are hereby incorporated in this Count.

**Answer:**

Stevens incorporates her answers to paragraphs 1 through 23, 28, 28 and 42

through 52 as her answer to paragraph 60.

61.    By the conduct described in paragraph 52 above, AA Capital, Orecchio, and Stevens:

a.    failed to act solely in the interest of the participants and beneficiaries of the ERISA Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the ERISA Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1 104(a)(I)(A);

b.    failed to discharge their duty with respect to the plan in accordance with the documents and instruments governing the Plan in violation of ERISA §404(a)(1)(D),  29 U.S.C. §1104(a)(l)(D); and

c.    acted on behalf of a party whose interests were adverse to the interests of the ERISA Plans or the interests of its participants and beneficiaries, in violation of ERISA 406(b)(2),  29 U.S.C. 1106(b)(2).

**Answer:**

Paragraph 61 asserts legal conclusions to which no answer is required.  Stevens

denies all factual allegations.

62.    By the conduct described in paragraphs 52 above, defendants Orecchio and AA Capital dealt with assets of the ERISA Plans in their own interest, in violation of ERISA §406(b)(l),  29 U.S.C. §1106(b)(l).

**Answer:**

No allegations are made against Stevens in paragraph 62.

### COUNT THREE

### Imprudent Investment in Xyiencc, Inc.

63.    The allegations contained in paragraphs 1 through 23 and 53 through 55 are hereby incorporated in this Count.

**Answer:**

Stevens incorporates her answers to paragraphs 1 through 23, and 53 through 55 as her answer to paragraph 63.

68.(sic)  By the conduct described in paragraphs 54 through 55 above, AA Capital, Orecchio, and Stevens:

a.        failed to act solely in the interest of the participants and beneficiaries of the Detroit Carpenters plan and the Operating Engineers plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA 404(a)(1)(A),  29 U.S.C. 1104(a)(1)(A); and,

b.        failed to discharge their duties with respect to the Detroit Carpenters plan and the Operating Engineers plan solely in the interests of plan participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of ERISA 404(a)(1)(B), 29 U.S.C. 1104(a)(l)(B).

**Answer:**

Paragraph 68 (sic) asserts legal conclusions to which no answer is required.

Stevens denies all factual allegations.

Dated:  August  8, 2008

Respectfully submitted,


    s/   Peter B. Shaeffer
**Attorney for Defendant**
**Mary Elizabeth Stevens**

Peter B. Shaeffer, Attorney
30 N. LaSalle Street - Ste. 2140
Chicago, IL  60602
Tel:  312-782-5306
Fax:  312-201-4559

CERTIFICATE OF SERVICE

I, Peter B. Shaeffer, an attorney, hereby certify that on the 8th day of August, 2008, service of a copy of the ANSWER OF MARY ELIZABETH STEVENS TO FIRST AMENDED COMPLAINT was accomplished pursuant to ECF as to ECF Filing Users upon the following.

Ruben Chapa
Christine Zuehlke Heri
Office of the Solicitor
230 South Dearborn Street
8th Floor
Chicago, IL  60604
Chapa.ruben@dol.gov
Heri.christine@dol.gov

Henry M. Baskerville
Joseph J. Duffy
William P. Ziegelmueller
Stetler & Duffy
11 S. LaSalle Street - Ste. 1200
Chicago, IL  60603
hbasker@stetlerandduffy.com
jduffy@stetlerandduffy.com
bziegel@stetlerandduffy.com

Michael P. Conway
Matthew I. Hafter
Mark  A. Semisch
Grippo & Elden
111 South Wacker Drive
Chicago, IL  60606
docket@grippoelden.com

Service was also made by electronic transmittal upon the following:

Wendi E. Sloane
William J. Barrett
Jessica Perez Simmons
Barack Ferrazzano Kirschbaum &
    Nagelberg LLP
200 West Madison Street
Suite 3900
Chicago, IL  60606-3465
(wendi.sloane@bfkn.com)
(william.barrett@bfkn.com)
(jessica.simmons@bfkn.com)

/s/ Peter B. Shaeffer
Peter B. Shaeffer, Attorney for
Defendant Mary Elizabeth Stevens
30 N. LaSalle Street - Ste. 2140
Chicago, IL  60602
(312) 782-5306